Reed, J.,
delivered the opinion of the court.
In January, 1889, one E. A. Wheeler, agent for the plaintiff, soliciting orders for nursery stock, received from the defendant in error two orders, the first bearing date January 21st, amounting to $150, the other dated January 28th, amounting to $50.00, the goods to be delivered the ensuing spring. Both were signed by defendant, and both contained the following: “ for which I agree to pay * * * dollars and * * * cents in cash on the day of delivery.” The orders were by the agent sent to his principal, hut at what time is not shown.
On the second day of February following, Wheeler, the agent, bought of Magnes two mares for the sum of $300, and gave him the following papers:
“ Denver, Colo., Feby. 2nd, 1889.
“ Sioux City Nursery & Seed Co.,
“Sioux City, Iowa.
“ Gentlemen: From the first commissions due on sales of nursery stock, to be delivered in Denver, Colo., in April, 1889, you will please pay Mr. Peter Magnes, or order, the sum of one hundred (100.00) dollars and charge the same to my account. Value received.
“ Denver, Feby. 2, ’89.
“Received of Mr. Peter Magnes two bay mares, about three and four years old, branded ‘ M ’ on left thigh, in full payment for two bills, or orders, for nursery stock, one bill for $150.00 and the other for $50.00, bought of the undersigned, Wheeler, as agent of the Sioux City Nursery & Seed Co. by said Peter Magnes.”
In the spring the stock ordered was shipped to J. S. Michael, the delivery and collection agent of the company, for delivery, who tendered it to defendant, demanded cash payment, according to the orders, and refused to recognize Wheeler’s transaction in regard to the horses. Defendant *174 refused to pay. The stock was not delivered, and with, the exception of about $20.00, received on sale, was lost to both parties by decay. Defendant (plaintiff below) brought suit to recover the $300 for the horses sold to the agent of the company. A trial was had in the county court before the judge without a juiy, resulting in a judgment against the plaintiff in error. An appeal was prosecuted and the judgment reversed. See 1 Colo. App. 45. A new trial was had before the court without a jury, resulting, as before, in a judgment in favor of the defendant in error, and is again brought here for review. With the exception of the evidence of the agent Wheeler, as to the knowledge of the company and adoption or ratification of the transaction, the case stands as before. Officers of the company denied all knowledge of it, while Wheeler testified that the receipt of payment was by him indorsed upon the orders by him, before they were transmitted to the company, and when confronted with the papers swore his indorsement had been erased. Expert examination was made and testimony to the effect that there had been no erasure, and a careful examination of the papers in this court shows that there had been none, and could have been none. The orders were executed upon the face of the papers, and the entire balance of the papers, back as well as front, was covered by closely printed lists of stock. No indorsement and erasure could have been made without destroying the printed matter, which remains undisturbed.
There are two or three facts that were more clearly brought out by the evidence on the subsequent than on the former trial, or which were overlooked or deemed unimportant in the former opinion, where it is said: “ At the time of, making the orders, Wheeler received from plaintiff two horses in full payment,” etc. The testimony upon the subsequent trial shows this to have been an error. Such was not the fact. The transactions were distinct, made at different times. The first order for $150.00 was made and executed by defendant January 21st, the second for $50.00 January 28th, the purchase of the horses on February 2d. The two orders signed *175 by defendant, in which he agreed to pay cash upon delivery, had either been forwarded to his principal or retained by the agent and the contracts remained unchanged.
So far as shown by the evidence the agent was only a solicitor. When he had received the executed orders, his authority and control ceased. When the delivery and collection were to be made, J. S. Michael was the agent for those purposes.
Several days after closing the contracts Wheeler purchased the horses and executed the papers in evidence. The evidence of Wheeler that it was the transaction of the company, and that it had ratified it, with full knowledge, must be disregarded. It is not only contradicted by the officers of the company, but by his own written documents.
The receipt given defendant does not upon its face purport to be the receipt of plaintiff, nor does it in any way refer to or identify any transactions had with the plaintiff. It says : “ In full payment for two bills of nursery stock, one bill for $150.00, the other $50.00, bought of the undersigned. E. A. Wheeler.”
In the proper and ordinary course of business, the receipt would be kept by defendant and would not be transmitted to the company; consequently, they would have no knowledge of the fact that the agent was attempting to perpetrate a fraud on either of the parties.
By the order given for $100, which would go to the plaintiff, it was required to pajr the money out of commissions due him, and charge to his account, which only evidenced an individual transaction of the agent. Neither the defendant nor plaintiff could be misled by the paper, nor would it convey any knowledge to the company that horses or anything else had been purchased on its behalf and for which it owed a debt.
The subsequent testimony of the witness cannot overcome the paper by him executed, and give the transaction a different character. It was a subsequent and individual transaction, whereby he succeeded in defrauding the defendant *176 out of the horses. It is clear from his own evidence that he never regarded the horses as the property of the principal or notified it of its existence. He took the horses to Denver, traded them for a horse and buggy, left the vicinity before nursery stock was to be delivered, and never accounted to the company for the horse and buggy, nor turned it over to a successor, but applied the proceeds to his own use. While the law, within certain well defined limits, will make the principal liable for frauds perpetrated in its name by the agent, it has never been held that the principal could be made liable for the individual frauds of an agent perpetrated on his own account. The agency of Wheeler was special and extremely limited, confined to the sale of stock on orders, for future delivery — a seller and solicitor. A party dealing with an agent of this class acts at his own peril, and is bound to inquire into the nature and extent of the authority actually conferred. Story on Agency, sec. 133; Snow v. Perry, 9 Pick. 542; Rossiter v. Rossiter, 8 Wend. 494; Lobdell v. Baker, 1 Met. 193.
Where, as in this case, the principal has never held the agent out as having any general authority, the party dealing with him trusts to the good faith of the agent and not to that of the principal. The maxim “ that he, who without intentional fraud, has enabled any person to do an act which must be injurious to himself or to another innocent party, shall himself suffer the injury rather than the innocent party, who has placed confidence in him,” has no application here. The agent had not been held out as having a general power. No acts of the plaintiff misled the defendant — both were innocent parties. See Story on Agency, secs. 126 and 127, and note. That an agent to sell goods must sell for cash, and cannot trade or barter without special authority, is well settled. Story on Agency, sec. 78; Lloyd’s Paley’s Agency, 213; Guerreire v. Peile, 3 B. & Ald. 616; and authorities cited in former opinion (1 Colo. App. 45).
There is a supposed technical error relied upon and argued ably by counsel, but we do not find it necessary to decide it, *177 the records warranting the decision reached. We prefer to dispose of it upon the merits. The judgment will be reversed and. the canse remanded.

Reversed.